R. Jeremy Adamson (12818)
**KUNZLER BEAN & ADAMSON, PC**
50 W. Broadway, Suite 1000
Salt Lake City, Utah 84101
Telephone: (801) 994-4646
jadamson@kba.law

*Attorneys for Court-Appointed Receiver*
*Chad Pehrson*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| CHAD PEHRSON, as Receiver,<br><br>  Plaintiff,<br><br>v.<br><br>MADISON TAYLOR, an individual, and ZACH TAYLOR, an individual,<br><br>  Defendants. | **COMPLAINT**<br><br>**(Ancillary to Case No. 1:22-cv-00135-RJS-DBP – General Order 23-009)**<br><br>Civil No. 1:24-cv-00143<br><br>Judge: _____<br><br>Magistrate Judge _____ |

Receiver Chad S. Pehrson hereby alleges, avers, and complains of defendants Madison Taylor and Zach Taylor (collectively, "**Defendants**") as follows:

### SHORT SUMMARY OF ACTION

1. Defendants benefitted from the proceeds of an illegal Ponzi scheme implemented by Stephen Romney Swensen. They did not convey value for what they received. And they should return the funds so that the funds may be returned to investors cheated by Ms. Taylor's Father, Stephen Swensen.

2. The wrongfully received proceeds included cash, house, computer and a

1

vehicle. The Receiver files this Action to recover all such proceeds, including any objects purchased with the proceeds. The Receiver anticipates imminent foreclosure motion practice relevant to the house described herein.

3. Defendants Mr. and Mrs. Taylor executed a promissory note[1] obliging them to repay $400,000 to WS Family IP, LLC (the "**Note**") in connection with a purchase the property located at reside at 1473 W. Monroe Way #15, Kaysville, UT 84037 (the "**Property**") where the Defendants reside. Defendants have not made any payments on the Note which is secured by a Trust Deed.[2]

4. Defendants also benefited from another $325,000 the Receivership Defendants paid in connection with the purchase of the Property where Defendants reside.

5. WS Family IP, LLC is a Receivership defendant in Case No. 1:22-cv-00135 pending in this District, and Plaintiff Chad Pehrson is acting in his capacity as Court-appointed Receiver over the assets of The Estate of Stephen Romney Swensen which include the assets of WS Family IP, LLC, The Estate of Stephen Romney Swensen, Crew Capital Group, LLC, and Swensen Capital, LLC (collectively, the "**Receivership Defendants**").

6. Ms. Taylor received payments from Stephen R. Swensen which came from investor funds including $20,895 from an account controlled by Crew Capital Group, LLC, and another $7,647.73 in payments from Stephen R. Swensen which were, upon information and belief, used for the purchase of a computer and a vehicle.

---

[1] See Exhibit A
[2] See Exhibit A

## PARTIES, JURISDICTION, AND VENUE

7. On August 8, 2023, the Receiver was appointed by this Court to identify, collect, and preserve the estates of the Receivership Defendants for the benefit of the estate's creditors, including over fifty defrauded investors.

8. The Receiver brings the instant action to recover the amounts and assets transferred to Defendants, which were fraudulently obtained by and belong to the Receivership Defendants and to enforce the Receivership Defendant WS Family IP, LLC's rights under a note and trust deed the Defendants executed.

9. Plaintiff has explicitly been granted authority to pursue fraudulent transfer actions.

10. Madison Taylor is an individual recipient of funds from the Ponzi scheme. Madison Taylor is married to Zach Taylor.

11. Zach Taylor is an individual recipient of funds from the Ponzi scheme. Zach Taylor is married to Madison Taylor.

12. Upon information and belief, Defendants reside at 1473 W. Monroe Way #15, Kaysville, UT 84037.

13. This Court has jurisdiction over the subject matter of this action because it is ancillary to the SEC Action and the appointment of the Receiver by this Court.

14. Defendants have sufficient minimum contacts with Utah that personal jurisdiction is appropriate in this Court. Personal jurisdiction is also proper pursuance to 28 U.S.C §§ 754, 1692.

15. Venue is proper in this Court pursuant to 28 U.S.C § 754 and 28 U.S.C. §

1391(b).

## THE RECEIVER, STANDING, AND STATUS OF SEC ACTION

16. On October 14, 2022, the Securities and Exchange Commission ("**SEC**") filed a complaint[3] against the Receivership Defendants in the United States District Court for the District of Utah, Case No. 1:22-cv-00135-RJS-DBP (the "**SEC Action**").

17. The SEC Action alleged that the Receivership Defendants fraudulently solicited over $29 million from investors who they tricked into investing in Crew Capital OPS, LLC ("**Crew Capital**"), which was allegedly co-managed by a reputable firm and purported to guarantee investors a minimum 5% annual return.

18. The SEC alleged that the Receivership Defendants did not invest in any securities. Instead, they misappropriated essentially all investor funds to make Ponzi scheme payments to other investors and to pay for Swensen's personal expenses, such as real estate, vehicles and multiple private aircrafts, and living expenses for him and his family.

19. Due to the Ponzi scheme, Defendants received, either directly or indirectly, approximately $350,000 from the Receivership Defendants. The transfers to Defendants furthered the fraudulent investment scheme without any legally recognized value for the transferred money.

20. On August 8, 2023, this Court entered an Order Appointing Receiver and Staying Litigation[4] (the "**Appointing Order**"), appointing Mr. Pehrson as permanent

---

[3] See Exhibit B
[4] See Exhibit C

Receiver.

21.     Pursuant to the Appointing Order[5], the Receiver is authorized to take immediate possession of all personal property of the Receivership Defendants, wherever located.

22.     The Receiver is further authorized to take immediate possession of all real property of the Receivership Defendants, wherever located.

23.     The Receiver is further authorized to initiate suit to recover all property of the Receivership Defendants in the possession of third parties.

24.     Since the entry of the Appointing Order, preliminary injunctions have been entered as to all the Receivership Defendants.

## THE FRAUDULENT PONZI SCHEME

25.     Stephen Romney Swensen ("**Swensen**") was a registered representative of broker-dealers Summit Brokerage Services, Inc (March 2010 to June 2014), Allegis Investment Services, LLC (July 2014 to May 2018), and J.W. Cole Financial, Inc. (May 2018 to June 2018), and an investment adviser representative of Allegis Investment Advisors, LLC (February 2017 to May 2018), J.W. Cole Advisors, Inc. (May 2018 to June 2018), and Wealth Navigation Advisors (June 2018 to June 2022).

26.     In the course of the Ponzi Scheme, the Receivership Defendants made material misrepresentations and omissions, misappropriated investors and other funds, and committed fraud as a commodity pool operator.

27.     The Receivership Defendants' purpose was to enable funding for Stephen

---

[5] See Exhibit C

Swensen and his family, which Defendants benefitted from.

28. From at least July 2011, Swensen began offering and selling investments in Crew Capital Group, LLC. Swensen approached his customers and clients during meetings, during which he provided advice on their investment portfolios and retirement plans. He suggested that they include Crew Capital in their investment and retirement strategies.

29. Swensen informed investors that Crew Capital was a safe investment fund offering guaranteed minimum annual returns of 5%. He claimed that Crew Capital could provide their retirement income and described it as a safe option for their portfolios.

30. Swensen also told some investors that they would invest in a fund at the Bank of Utah, promising the same guaranteed minimum returns of 5% to 10%. He assured them that this Bank of Utah fund was also a safe option for their portfolios. However, there was no such fund at the Bank of Utah. After investors deposited their money at the Bank of Utah, Swensen promptly transferred these funds to Crew Capital's account at Wells Fargo Bank.

31. Swensen also provided some investors with written documentation about the fictitious Crew Capital investment, falsely portraying Crew Capital as an "actively managed portfolio" investing in senior secured floating rate loans and options on the S&P 500 index. Some documents falsely claimed that Pacific Investment Management Company, LLC ("**PIMCO**") was the subadvisor to Crew Capital and that Crew Capital had been established in 1997. Other documents incorrectly stated that Crew Capital's "share class inception" date was April 29, 2011. Additionally, Swensen hired a graphic design company to create an official-looking logo, which he used on Crew Capital documentation.

6

32. Swensen gave certain investors falsified PIMCO documents to create the impression that PIMCO and Crew Capital jointly managed a "Senior Floating Rate Fund." One document claimed to be an annual report of the "Crew Capital Group / PIMCO Funds," stating that a collaborative fund existed with total assets of $318,897,000. However, PIMCO had no association whatsoever with Swensen or Crew Capital.

33. Swensen created a website for Crew Capital with the help of a web developer and a graphic designer. Initially named Capital Cooperative, the website was found at www.capitalcoop.com. Later, when it became Crew Capital in 2015, the website changed to www.crewfunds.com. These sites claimed that Crew Capital could remove market risk, stating: "Do you want to eliminate market turbulence? Talk to your financial advisor about how." Swensen gave investors login details for these sites, where they could see their account balances, including fake returns. The accounts supposedly showed daily growth of the guaranteed 5% yearly returns, with an extra lump sum payment of up to another 5% annual return on the anniversary of their investment. However, these statements and claims were fabricated.

34. Swensen managed a bank account at Wells Fargo Bank under the name of Crew Capital. He had exclusive control over the account and used it to pool investor funds from Crew Capital.

35. Swensen acquired investor funds by instructing investors at different times to write personal checks to Crew Capital, obtaining cashier's checks payable to Crew Capital, wiring funds directly to Crew Capital's accounts at Wells Fargo Bank, and/or signing documents authorizing the transfer of funds into Crew Capital's account from their

7

other investment or retirement accounts.

36.    Swensen also directed several investors to open self-directed IRA accounts at the Bank of Utah. He then had these investors sign a "Letter of Authorization," granting him the authority to manage the funds in their self-directed Bank of Utah IRA accounts. After the investors deposited money into their new Bank of Utah accounts or transferred money from other investment or retirement accounts, Swensen instructed the Bank of Utah to wire the funds to Crew Capital's account at Wells Fargo Bank.

## AMOUNTS RECEIVED BY DEFENDANTS

**The Property**

37.    On December 8, 2021, Swensen entered a New Construction Real Estate Purchase Contract ("**Purchase Contract**")[6] with 317 Kaysville OPS, LLC (the "**Seller**").

38.    The Purchase Contract[7] is for the property located at 1473 W. Monroe Way #15, Kaysville, UT 84037, in the Villas on 2nd Subdivision/Development under Tax ID# 11-868-0015 (the "Property").

39.    The total purchase price for the Property was either $666,500 or $710,000.[8] The agreed-upon payments included:

---

[6] See Exhibit D
[7] See Exhibit D
[8] On June 1, 2022, Wendy M. Swensen entered into an additional New Construction Real Estate Purchase Contract with the Seller for the same Property. In that REPC, the agreed upon purchase price for the property was $710,000. The Seller accepted and signed the REPC the same day. In Addendum No. One of that REPC, the parties agreed upon the following payments: $125,000 on June 10, 2022; $125,000 on June 17, 2022; and $135,000 on June 24, 2022. However, from our knowledge and information, the checks submitted to the Seller from the Receivership Defendants were sent prior to the formation of the second REPC signed by Wendy Swensen.

  a.  An Earnest Money Deposit in the amount of $5,000.

  b.  A Construction Deposit in the amount of $60,000.

  c.  A Permanent Loan at an amount to be determined.

  d.  The Balance of Purchase Price in Cash at Settlement in a price to be determined.

40. On December 8, 2021, the Seller accepted and signed the Purchase Contract[9].

41. On December 8, 2021, Swensen made a nonrefundable deposit to Seller for $65,000 via cashier's check from the Crew Capital Wells Fargo account for the Earnest Money Deposit and Construction Deposit.[10]

42. During the period when the home was still being built, the Receivership Defendants made the following payments to Seller from an America First Credit Union account, which contained investor funds:

  e.  On May 18, 2022, a payment in the form of a cashier's check for the amount of $135,000 drawn from America First Credit Union.[11]

  f.  On May 31, 2022, a payment in the form of a cashier's check for the amount of $125,000 drawn from America First Credit Union.[12]

43. On or about July 20, 2022, the Seller transferred ownership of the Property to Defendants via a Warranty Deed[13] for $10.00 and "Other Good and Valuable

---

[9] See Exhibit D
[10] See Exhibit E
[11] See Exhibit F
[12] See Exhibit G
[13] See Exhibit H

Consideration Paid."[14]

44. The Receivership Defendants transferred money via the Property to Defendants with improper intent, including intent to hinder, delay, or defraud the rightful owners of the funds.

45. Defendants ultimately received the benefit of no less than the $325,000 payments contributed to the Property from the Receivership Defendant's Crew Capital Wells Fargo and America First Credit Union accounts.

**The Note and Trust Deed**

46. Defendants executed a Secured Promissory Note on July 21, 2022, in favor of WS Family IP, LLC (the "**Note**"). The amount owed under the Note is $400,000 plus interest and late fees.[15]

47. To secure payment of the Note and the performance of other obligations, the Defendants executed and delivered to WS Family IP, LLC a Trust Deed encumbering the Property which is dated July 21, 2022 (the "**Trust Deed**").[16]

48. The Property is described as follows:

All of Lot 15, The Villas on 2nd PRUD Subdivision, according to the official plat thereof on file and on record in the Davis County Recorder's Office.

TOGETHER WITH A RIGHT AND EASEMENT OF USE AND ENJOYMENT IN AND TO THE COMMON ELEMENTS DESCRIBED AND AS PROVIDED FOR IN SAID DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

---

[14] The Davis County property records show that WS Family IP LLC was owner of the Property on or about July 21, 2022.
[15] See Exhibit A.
[16] See Exhibit A (WS Family IP, LLC notes that due to a scrivener's error it is listed as the Trustor as opposed to the Beneficiary of the Trust Deed while the Defendants are listed as the Beneficiaries rather than the Trustors.)

49. The Trust Deed is, and has at all times been, a good and sufficient lien against the Property.

50. Defendants have failed to make all payments when due under the Note.

51. WS Family IP, LLC has performed all of its obligations under the Note.

52. Defendants' failure to make all payments under the Note when due constitutes a default under the Trust Deed, entitling WS Family IP, LLC to exercise all of its remedies thereunder.

53. As provided by the Trust Deed and as allowed by law, WS Family IP, LLC has elected to foreclose on the Trust Deed in accordance with the laws governing judicial foreclosure of mortgages.

54. Any interest the Defendants claim in the Property are inferior in priority to the Trust Deed.

55. Among WS Family IP, LLC's remedies upon default under the Note and Trust Deed, WS Family IP, LLC is entitled to entry of a decree directing that the Trust Deed shall be foreclosed as a mortgage and that the Property shall be sold according to law and the practice of this Court to satisfy the amounts found to be due on the Note and that the proceeds of sale upon the Trust Deed be applied as allowed by law and as directed by WS Family IP, LLC.

56. Following sale of the Property, WS Family IP, LLC is entitled to a judgment against the Defendants, jointly and severally, for any deficiency remaining after deducting from the balance owing under the Note all sums received by WS Family IP, LLC upon sale of the Property and proper expenses incurred.

57. Pursuant to the Trust Deed, the Property serves as security for payment of all costs and expenses reasonably incurred by WS Family IP, LLC and resulting from the Defendants default under the Note, including payment of all taxes, assessments, insurance premiums, title-related expenses, and attorneys' fees and costs.

58. WS Family IP, LLC and the Receiver have found it necessary to engage the attorneys appearing herein on its behalf to enforce the Note and Trust Deed, and the Receiver has agreed to pay these attorneys for services rendered. WS Family IP, LLC is entitled to recover reasonable attorney's fees from the Defendants arising from Defendants' breach of the Note and Trust Deed.

59. WS Family IP, LLC is also entitled to an award of costs.

**Other Payments**

60. Ms. Taylor also received $20,895 in payments from Crew Capital Group, LLC accounts and another $7,647 from Stephen R. Swensen which upon information and belief came from investor funds and was used to purchase a computer and pay for part of the purchase price of a car for the Defendants.

**FIRST CLAIM FOR RELIEF**
**(Avoidance of Fraudulent Transfers)**

61. The Receiver hereby incorporates the foregoing paragraphs of this Complaint herein by this reference.

62. The Receivership Defendants operated Crew Capital as a Ponzi scheme.

63. The Receivership Defendants paid the required deposits and payments for the Property on behalf of Defendants, totaling $325,000.

64. The Receivership Defendants paid Ms. Taylor $20,895 from a Crew Capital

Group, LLC account.

65. The Receivership Defendants paid another $7,647 to Ms. Taylor that came from investor funds and was used, upon information and belief, to purchase a computer and pay for part of the purchase price of a car for the Defendants.

66. Because the Receivership Defendants operated a Ponzi scheme, as a matter of law, the transfers to Defendants were made with the intent to hinder, delay, or defraud creditors.

67. Defendants did not provide reasonably equivalent value to any Receivership Defendants for the amounts the Receiver seeks to avoid.

68. Pursuant to Utah's Uniform Voidable Transactions Act, the Receiver may avoid and recover the transfers made to Defendants.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

69. The Receiver hereby incorporates the foregoing paragraphs of this Complaint herein by this reference.

70. The transfers to Defendants were compromised of property of the Receivership Defendants and were made by the Receivership Defendants in furtherance of the fraud scheme.

71. The transfers to the Defendants conferred a benefit on Defendants.

72. Defendants knowingly benefitted from the transfers.

73. Allowing Defendants to retain the transfers at issue in this lawsuit would unjustly enrich them and be inequitable.

74. Absent the return of the transfers, the Receivership Estate would be

damaged by Defendants' unjust enrichment and may have no adequate remedy of law.

75. Defendants must disgorge the amount of the transfer.

### THIRD CLAIM FOR RELIEF
(Breach of Note)

76. The Receiver hereby incorporates the foregoing paragraphs of this Complaint herein by this reference.

77. On or about July 21, 2022, WS Family IP, LLC loaned the Defendants $400,000 pursuant to the Note (the "**Loan**")[17].

78. On or about July 21, 2022, in consideration for the Loan, the Defendants executed the Note.

79. The Note[18] mandates that the Defendants make monthly payments to WS Family IP, LLC.

80. The Note[19] sets forth an interest rate of 5.5% per annum prior to any default and a default interest rate of 12% per annum.

81. The Defendants failed to make required monthly payments when due under the Note.[20]

82. WS Family IP, LLC performed all of its obligations under the Note.[21]

83. The Defendants' failure to make all payments under the Note when due constitutes a default under the Note.[22]

---

[17] See Exhibit A
[18] See Exhibit A
[19] See Exhibit A
[20] See Exhibit A
[21] See Exhibit A
[22] See Exhibit A

84. WS Family IP, LLC is entitled to exercise all of its remedies under the Note, including recovery of all amounts owing thereunder.

85. The Defendants default under the Note has damaged WS Family IP, LLC in an amount to be proven at trial, but not less than $400,000.

## FOURTH CLAIM FOR RELIEF
(Foreclosure of Trust Deed)

86. The Receiver hereby incorporates the foregoing paragraphs of this Complaint herein by this reference.

87. To secure payment of the Note[23] and the performance of other obligations, the Defendants executed and delivered to WS Family IP, LLC a Trust Deed encumbering the Property which is dated July 21, 2022 (the "**Trust Deed**").[24]

88. The Property is described as follows:

All of Lot 15, The Villas on 2nd PRUD Subdivision, according to the official plat thereof on file and on record in the Davis County Recorder's Office.

TOGETHER WITH A RIGHT AND EASEMENT OF USE AND ENJOYMENT IN AND TO THE COMMON ELEMENTS DESCRIBED AND AS PROVIDED FOR IN SAID DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

89. The Trust Deed[25] is, and has at all times been, a good and sufficient lien against the Property.

90. Defendants have failed to make all payments when due under the Note.[26]

---

[23] See Exhibit A
[24] See Exhibit A
[25] See Exhibit A
[26] See Exhibit A

91.     WS Family IP, LLC has performed all of its obligations under the Note.[27]

92.     Defendants' failure to make all payments under the Note when due constitutes a default under the Trust Deed,[28] entitling WS Family IP, LLC to exercise all of its remedies thereunder.

93.     As provided by the Trust Deed[29] and as allowed by law, WS Family IP, LLC has elected to foreclose on the Trust Deed in accordance with the laws governing judicial foreclosure of mortgages.

94.     Any interest the Defendants claim in the Property are inferior in priority to the Trust Deed.[30]

95.     Among WS Family IP, LLC's remedies upon default in the Note and Trust Deed,[31] WS Family IP, LLC is entitled to entry of a decree directing that the Trust Deed shall be foreclosed as a mortgage and that the Property shall be sold according to law and the practice of this Court to satisfy the amounts found to be due on the Note and that the proceeds of sale upon the Trust Deed be applied as allowed by law and as directed by WS Family IP, LLC.

96.     Following sale of the Property, WS Family IP, LLC is entitled to a judgment against the Defendants, jointly and severally, for any deficiency remaining after deducting from the balance owing under the Note[32] all sums received by WS Family IP, LLC upon

---

[27] See Exhibit A
[28] See Exhibit A
[29] See Exhibit A
[30] See Exhibit A
[31] See Exhibit A
[32] See Exhibit A

sale of the Property and proper expenses incurred.

97. Pursuant to the Trust Deed,[33] the Property serves as security for payment of all costs and expenses reasonably incurred by WS Family IP, LLC and resulting from the Defendants default under the Note, including payment of all taxes, assessments, insurance premiums, title-related expenses, and attorneys' fees and costs.

98. WS Family IP, LLC and the Receiver have found it necessary to engage the attorneys appearing herein on its behalf to enforce the Note and Trust Deed,[34] and the Receiver has agreed to pay these attorneys for services rendered. WS Family IP, LLC is entitled to recover reasonable attorney's fees from the Defendants arising from Defendants' breach of the Note and Deed of Trust.

99. WS Family IP, LLC is also entitled to an award of costs.

## PRAYER FOR RELIEF

WHEREFORE, the Receiver prays as follows:

A. Under the First and Second Claims for Relief, for judgment against the Defendants in the amount of $353,542 plus pre-judgment interest, costs, and fees, including reasonable attorney's fees, as may be allowed by law.

B. Under the Third Claim for Relief, for judgment against the Defendants in the amount of $400,000, plus interest, all costs and expenses (including but not limited to attorney's fees) reasonable incurred by WS Family IP, LLC and resulting from the default under the Note.

---

[33] See Exhibit A
[34] See Exhibit A

C.  Under the Fourth Claim for Relief,

   a. That the Court enter a decree determining that pursuant to the Note and Trust Deed, the Defendants are jointly and severally indebted to WS Family IP, LLC in the amount of $400,000, plus accrued interest and all costs and expenses reasonably incurred by WS Family IP, LLC and resulting from default under the Note and Deed of Trust;

   b. That the Court award WS Family IP, LLC its costs and disbursements incurred herein, including but not limited to all foreclosure report and title fees, appraisal fees, UCC search fees, court costs, sheriff's fees, costs of procuring abstracts and evidences of title, costs of title insurance, any sums which WS Family IP, LLC has been or may be required to advance or pay during the pendency of this action for insurance, repairs, or discharge of any taxes or assessments levied upon the Property, and any sums (with interest) WS Family IP, LLC may pay in redemption of the Property from any tax sale;

   c. That the Court determine that the Property is security for the payment of all costs and expenses reasonably incurred by WS Family IP, LLC and resulting from default under the Note and Trust Deed;

   d. That the Court determine and award to WS Family IP, LLC reasonable attorney's fees;

   e. That the Court determine and decree, against the Defendants, that the Trust Deed is a good and sufficient lien upon the Property senior in

  priority to all interests of the Defendants in the Property, and secure payment of all obligations evidenced by the Note;

f. That the Court direct that the Property be foreclosed and sold by a Sheriff of Utah, according to law and the practice of this Court to satisfy all amounts due and owing to WS Family IP, LLC;

g. That the Defendants, and all persons claiming by, through, or under any of the Defendants, be forever barred and foreclosed of all right, title, claim, and interest in and to the Property and any part thereof;

h. That the Court direct that WS Family IP, LLC or any other party to this action may become a purchaser at the sale of the Property; that a Sheriff of Utah be directed to execute and deliver Certificates of Sale as required by law following the foreclosure sale of the Property; that the Sheriff be directed to execute and deliver a deed and/or assignment, as the case may be, to the purchaser (or purchasers) of the Property upon expiration of the period of redemption as prescribed by law; and that said purchaser(s) be let into possession of the Property at the earliest date allowed by law; and

i. That the Court direct that after the sheriff's sale of the Property, WS Family IP, LLC have and recover judgment against the Defendants, jointly and severally, for any deficiency remaining after subtracting, from the total indebtedness due under the Loan, all sums obtained by

WS Family IP, LLC from foreclosure of the Property and applied to the Loan.

DATED this 29th day of August, 2024.

             KUNZLER BEAN & ADAMSON

             */s/R. Jeremy Adamson*
             R. Jeremy Adamson
             *Attorney for the Receiver*

             */s/Chad S. Pehrson*
             Chad S. Pehrson
             *Receiver*